1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   First National Insurance Co,                    No. C 10-2126  JL

12              Plaintiffs,                           **ORDER**

13        v.

14   GEO Grout, Inc, et al.,

15              Defendants.
     _____/

16

**I.    Introduction**

        The Court has jurisdiction over this action under 28 U.S.C. §1332 , diversity of

citizenship. All parties consented to this Court's jurisdiction under 28 U.S.C. §636(c). First

National's applications for writs of attachment, e-filed at Docket Numbers 35-41, came on

for hearing on shortened time. James Curran appeared for First National. Michael Rice

appeared for Defendants. First National had also filed objections to the declaration of

Defendant Kenneth Tholin, on the basis that he was testifying to matters outside his

personal knowledge. The Court finds that it need not require that evidence be admissible in

order to consider it in ruling on the instant motion, so that objection is overruled. The

admissibility of evidence will be determined when the Court decides the First National's

motion for summary judgment. First National also objected to the Defendants' claims of

exemptions. The Court did not consider these claims in making its decision on the

1   applications for writs, so this objection is overruled as moot. The Plaintiff's motion for

2   summary judgment is on calendar for hearing on December 22, 2010. The Court rejected

3   Defendants' request to continue the hearing on the applications and consolidate it with the

4   hearing on the motion for summary judgment. The parties are scheduled to participate in

5   mediation on December 2.

6        The Court carefully considered the moving and opposing papers and the arguments

7   of counsel and hereby denies the applications for writs of attachment. The Court finds that

8   there is an equitable solution which protects First National's interest in obtaining an

9   enforceable judgment against Defendants, either by Court order or through mediation,

10  while preventing the irreparable harm to Defendants of destroying their capacity to

11  generate income to maintain their business and pay their creditors. Specifically, it is hereby

12  ordered that Defendants shall not sell, transfer or encumber their two residential properties,

13  consisting of Defendants' homes in Fairfield and San Mateo. In addition, Defendants shall

14  not sell, transfer or encumber any of their business equipment listed at Exhibit 1 to the

15  Applications for Writs of Attachment. The Court accepts Defendants' counsel's

16  representation at the hearing on this matter that the total equity in the homes, plus the

17  value of the business equipment, substantially exceeds the value of First National's claims

18  in this action.

19       **II.    Background**

20       **A.    First National's Contentions**

21       First National and Defendants entered into a General Agreement of Indemnity for

22  Contractors dated August 23, 2007 ("Indemnity Agreement"), as partial consideration for

23  First National issuing surety bonds on behalf of Geo Grout.

24       Following the execution of the Indemnity Agreement, Geo Grout entered into

25  various public and private works contracts (collectively, the "Contracts"). The Contracts

26  required, inter alia, that Geo Grout have a license bond, and furnish the respective project

27  owners with a performance bond and a labor and materials payment bond in amounts

28  specified in the respective contract documents.

**United States District Court**
For the Northern District of California

1    In reliance upon the Indemnity Agreement and at the request of Defendants, First

2    National issued performance bonds, payment bonds, license bond, and possibly other

3    bonds (collectively, the "Bonds") on behalf of Geo Grout. After First National issued the

4    Bonds, Geo Grout failed to meet certain obligations under the Contracts. Claims have been

5    made, and continue to be made, against the Bonds.

6    First National requested and continues to request, both orally and in writing, that

7    Defendants indemnify, exonerate and hold First National harmless from all loss, liability,

8    damages and expenses which First National incurs or sustains because of having issued

9    the Bonds.

10    Defendants failed to indemnify, exonerate and hold First National harmless from all

11    loss, liability, damages and expenses which First National incurs or sustains because of

12    having issued the Bonds.

13    First National incurred, and continues to incur, significant losses, costs and

14    expenses due to the investigation, defense and satisfaction of claims against the Bonds.

15    The losses, costs and expenses actually incurred by First National and resulting from

16    claims against the Bonds are presently in excess of the jurisdiction of this Court.

17    In addition to its actual losses, costs and expenses described above, First National

18    anticipates that it will incur losses, costs, and expenses in connection with the Bonds on

19    claims which have been made (but for which First National has yet to ascertain whether it

20    bears liability on the amounts which may be due to the claimants), and for claims which

21    have yet to be made.

22    The list of equipment (including compressors, trucks, forklifts, and concrete mixers)

23    on which First National seeks to impose writs of attachment is at Exhibit 1 to each of the

24    applications, which are in turn addressed to Geo Grout, Inc., Kenneth A. Tholin, Patricia A.

25    Tholin, Enrique Quiles, Elizabeth Quiles, R & K Associates, and The Tholin Revocable

26    Trust. First National posted a $10,000 undertaking, (Docket # 60) as required by California

27    Code of Civil Procedure §489.220. The total value of this equipment, handwritten on the

28    Exhibit, is $863,000. First National also seeks writs of attachment on the commercial real

United States District Court
For the Northern District of California

estate of Defendants,  the personal residences of Defendants Kenneth and Patricia Tholin and Enrique and Elizabeth Quiles, and all cash, receivables and other assets of Defendants (Proposed Orders e-filed at Docket #s 45-58). While First National Bank has a senior lien on the business equipment, counsel agreed at the hearing that it had no liens on the residential property. Although First National's counsel expressed concern that the equipment might be overvalued, he conceded that the residential properties might be sufficient to satisfy his client's lien.

### B.      Defendants' Contentions

Defendants, and in particular the Bond principal, Geo Grout, are involved in a construction dispute with a prime contractor, Sukut Construction, Inc. ("Sukut"), on a project for the East Bay Municipal Utility District for seismic upgrades to the San Pablo Dam ("the Project"). Geo Grout encountered differing site conditions that required additional and costly work and impacted Geo Grout's project costs. While acknowledging that Geo Grout encountered differing site conditions, Sukut wrongfully terminated Geo Grout and failed to pay Geo Grout the contract sums due (over $300,000) and the extra costs due (again, over $300,000).

First National provided payment and performance bonds to Geo Grout on the Project, and First National has paid several claimants pursuant to the terms of the payment bond. Geo Grout has offered collateral to First National that Geo Grout believes satisfies its indemnity obligations to First National pending resolution of Geo Grout's claims against Sukut. First National declined to accept the collateral offered by Geo Grout. Defendants and First National continue to negotiate in good faith over the provision of collateral to First National pending Geo Grout's resolution of the dispute with Sukut.

### III.      First National's Application for Writs of Attachment

### A.      First National claims it provides competent evidence in support of its application

**United States District Court**
For the Northern District of California

1  First National asks this Court to find that its Application is a straightforward and

2  simple document. The reasons underpinning First National's right to an attachment are

3  similarly clear: Defendants entered into a written contractual agreement to indemnify First

4  National for any losses, costs and expenses incurred by First National as a result of having

5  issued the Bonds; First National incurred losses, costs and expenses under its Bonds;

6  Defendants failed to indemnify First National for those losses.

7  First National asks this Court to find that it has made a prima facie showing that it is

8  more likely than not that it will obtain a judgment against Defendants on its claim for breach

9  of the Indemnity Agreement. CCP § 481.190. It is undisputed that the Defendants executed

10  the Indemnity Agreement in favor of First National. The terms of the Indemnity Agreement

11  are unambiguous and fully enforceable. In the event that a claim is made against a Bond,

12  the Indemnity Agreement provides that Defendants are jointly and severally obligated to

13  provide indemnity to First National. (See Echigoshima Declaration, ¶ 9 [Document 30].)

14  First National received multiple claims by Geo Grout's vendors under the Payment

15  Bond. First National paid those claims. Defendants admit First National paid those claims.

16  Defendants failed, and continue to fail, to protect, exonerate and indemnify First National as

17  required by the Indemnity Agreement. (Echigoshima Declaration, ¶ 29 [Document 30].)

18  Predicated upon the foregoing, and as more fully detailed in the moving papers, First

19  National is undeniably more likely than not to prevail on its claims against Defendants. As

20  such, First National now seeks to attach Defendants' assets in the total amount of

21  $505,095.79.

22  To establish this claim, Bruce Echigoshima, whose duties include maintaining First

23  National's business records, described the losses, costs and expenses incurred by First

24  National under its Bonds, and declared that despite demand, Defendants failed to pay First

25  National these amounts. (See Declaration). The amount in dispute is readily ascertainable,

26  and detailed in the declarations of Bruce Echigoshima, Blake Wilcox and James Curran.

27  (See Documents e-filed at Docket #s 30, 31, 32, 43, and 44.)

28  **B.    First National claims it seeks attachment for a proper purpose**

1    Defendants' allege, without foundation, that First National seeks attachment for the

2   purpose of crippling the Defendants financially. This allegation is unsubstantiated. Further,

3   it provides no basis for Defendants' opposition. See, e.g., *General Insurance Co. of*

4   *America v. Singleton*, 40 Cal.App.3d 439 (1974) (impaired financial condition of the

5   indemnitor did not preclude attachment of receivership assets); *North Hollywood Marble*

6   *Co. v. Superior Court*, 157 Cal.App.3d 683, (1984).

7    Defendants provide no authority to support the argument that a potential result of

8   attachment, namely, financial impairment of an indemnitor, establishes proof of improper

9   purpose. Also, Defendants fails to provide any evidence, beyond speculation, that Geo

10   Grout will, in fact, suffer financial impairment as a result of attachment. Finally, Defendants

11   presents no evidence whatsoever that First National has any knowledge of what effect an

12   attachment will have upon Defendants.

13    **C.    First National argues that Defendants failed to plead setoff as an**
        **affirmative defense**

14

15    Setoff is an affirmative defense under Federal Rule of Civil Procedure 8(c). See 5 C.

16   Wright & A. Miller, *Federal Practice and Procedure* § 1271 (1990); *Davis v. Odeco, Inc.*, 18

17   F.3d 1237, 1245 (5th Cir. 1994). Defendants were required to plead offset as an affirmative

18   defense. They failed to do so. Failure to plead an affirmative defense with specificity waives

19   the right to assert that defense. *Horton v. Potter*, 369 F.3d 906, 911-12 (6th Cir. 2004);

20   *Davignon v. Clemmey*, 322 F.3d 1, 15 (1st Cir. 2003). Defendants' claim for offset should

21   be rejected on that basis alone. In addition, First National argues that it filed a Notice of

22   Interested Entities naming Safeco and that Defendants cannot claim to have only recently

23   discovered the relationship between Safeco, First National and Liberty Mutual.

24    **D.    First National argues that Defendants' claim for offset fails due to lack**
        **of mutuality between Safeco and First National**

25    First National argues that even assuming that Defendants did not waive the right to

26   assert a claim for offset, the defense of offset is inapplicable to the facts presented in this

27   action insofar as there is no "mutuality" between First National and Safeco.

28

United States District Court

For the Northern District of California

1    It is a general rule that the right to setoff exists when the parties hold mutual

2    cross-demands under such circumstances that in equity they should be applied one against

3    the other. *Harrison v. Adams*, 20 Cal.2d 646 (1942); *Birman v. Loeb*, 64 Cal.App.4th 502,

4    518 (1998). However, in order to warrant an offset the debts must be mutual and the

5    principle of mutuality requires that the debts should not only be due to and from the same

6    person, but in the same capacity. Kaye v. Metz, 186 Cal. 42, 49 (1921); *Petersen v. Lyders*,

7    139 Cal.App. 303, 306 (1934); *H. K. McCann Co. v. Week*, 115 Cal.App. 393, 398 (1931).

8    Defendants argue that it is inequitable to permit First National to obtain a writ of

9    attachment when First National's parent corporation owes more money to Geo Grout than

10   Geo Grout owed to First National. (Opposition at p. 8.) Defendants further argue that

11   because First National has no employees, operates as a business unit of Liberty Mutual,

12   and consolidates its taxes and financial statements with its parent corporation, mutuality

13   exists for purposes of offset. (Opposition at p. 9.) To the contrary, First National argues that

14   the debts of First National and Safeco are not "mutual" and may not be offset against each

15   other. *In re Matter of Vehm Engineering Corp.*, 521 F.2d 186, 191 (9th Cir. 1975) (citing *In*

16   *re Berger Steel Co.*, 327 F.2d 401 (7th Cir. 1964)); see also *In re County of Orange*, 183

17   BR 609 (C.D. Cal. 1995).

18   First National does not deny that it is a wholly-owned subsidiary of Safeco. However,

19   as evidence by the Declaration of Blake Wilcox (filed concurrently herewith), while First

20   National and Safeco are ultimately owned by the same company, Liberty Mutual Holding

21   Company, Inc., First National and Safeco are separate entities. (Declaration of Blake

22   Wilcox ["Wilcox Declaration"], ¶ 3.)

23   . Both companies have separate losses. Wilcox Declaration, ¶ 3.

24   . Both companies have separate profits. Wilcox Declaration, ¶ 3.

25   . Both companies have separate treasury limits. Wilcox Declaration, ¶ 3.

26   . Both companies have separate ratings for insurance purposes. Wilcox Declaration,

27   ¶ 3.

28

United States District Court

For the Northern District of California

1    . Both companies are registered separately with California's Department of

2    Insurance. Wilcox Declaration, ¶ 3.

3        In summary, First National asks the Court to conclude that First National and Safeco

4    are two separate and distinct corporations.

5        **E.    First National asks this Court to find that Defendants fail to make a**
        **prima facie showing that they will prevail on a claim for offset.**

6

7        To the extent that Defendant Geo is indeed relying on an offset claim as a defense,

     First National argues that Defendants are then required to meet the pre-requisites of the

8    attachment statutes. *Pos-A-Traction. Inc. v. Kelly-Springfield Tire Co.*, 112 F. Supp. 2d

9    1178, 1183 (C.D. Cal. 2000). "[T]o sustain reduction in a writ amount, most courts require

10   that the defendant [or counterdefendant] provide enough evidence about its counterclaims

11   [or claims] and/or defenses to prove a prima facie case." Id. (citing Apart, *California*

12   *Practice Guide: Enforcing Judgments and Debts*, ¶ 4:64 (1998 rev.)); see also Law

13   Revision Commission Comments to 1983 Amendment to C.C.P. § 483.015.

14   Defendants failed to provide any admissible evidence to prove a prima facie case that Geo

15   Grout will be successful on its claims against Sukut or Safeco under its payment bond.

16       **F.    First National argues that Defendants' offset defense does not establish**
        **the probable invalidity of First National's claim**

17

18       Finally, First National argues that even if the Court were to consider Defendants'

19   offset claim, there has been no admissible evidence set forth by Defendants to establish

20   the probable invalidity of First National's claim that Defendants' breached the Indemnity

21   Agreement. *(Intervest Mortg. Inv. Co. v. Skidmore*, 2008 WL 5385880, *7 (E.D. Cal. Dec.

22   19, 2008) [granting writ of attachment based on failure to show that defenses effected the

23   probable validity of plaintiff's claim].)

24       Defendants cite *First National Insurance Company v. Cam Painting, Inc.*, 173

25   Cal.App.4th 1355 (2009) [*"Cam Painting"*] in its Opposition to support its assertions that

26   Safeco, as Sukut's payment bond surety, should have paid Geo Grout's vendors, not First

27   National. Defendants' reliance on *Cam Painting* is misplaced. In fact, *Cam Painting* wholly

28

United States District Court
For the Northern District of California

1    supports that First National, as Geo Grout's payment bond surety, had the primary

2    obligation to pay Geo Grout's vendors. In *Cam Painting*, the surety issued statutory

3    payment bonds on behalf of the general contractor (Cam Painting) and the subcontractor

4    (Sabco Electrique). The general contractor's payment bond named the school district as

5    the obligee. The subcontractor's payment bond named the general contractor (Cam) as

6    obligee.

7         This key fact is the basis for the court's holding that the subcontractor's payment

8    bond had the primary obligation here to pay claims asserted by the subcontractor's

9    supplier. The court reasoned that the principles of surety law required the surety to perform

10   on the subcontractor bond, according to its terms. In pertinent part, the court went on to

11   state:

12        The bond made First National responsible to Cam, the obligee, for Sabco's debt.
         Cam insisted that Sabco obtain a payment bond so that, should Sabco fail to pay a
13        supplier, it (Cam) would not have to "fight it out" with Sabco, but could rely on
         Sabco's surety to pay the claim. That is the promise First National must keep. *Cam
14        Painting*, supra, 173 Cal.App.4th at 1365.

15        Defendants claim that Safeco, not First National, should have paid the claims of Geo

16   Grout's vendors ignores that the terms of the Subcontract between Sukut and Geo Grout

17   required Geo Grout to obtain a Payment Bond. (A true and correct copy of the Subcontract

18   is attached as Exhibit 1 to the Supplemental Declaration of Bruce S. Echigoshima

19   ["Echigoshima Supplemental Declaration"], ¶ 8). Pursuant to the terms of the Subcontract,

20   First National issued a Payment Bond on behalf of Geo Grout. (A true and correct copy of

21   the Payment Bond is attached as Exhibit 2 to the Echigoshima Supplemental Declaration, ¶

22   9.)

23        First National does not deny that since both First National and Safeco's are statutory

24   payment bonds under Civil Code Section 3248, both bonds could potentially cover the

25   same types of claims (i.e., all persons named in California Civil Code Sections 3110, 3111,

26   or 3248). However, the obligation of First National and Safeco to those claimants is

27

28

1  separate based on the language of the bonds. *Cates Construction, Inc. v. Talbot Partners*,

2  21 Cal.4th 28, 38 (1999); Cal. Civ. Code § 2787.

3      The surety relationship is a tripartite one, in which the obligee, rather than the

4  principal, is protected by the surety's promise to pay if the principal does *not. Washington*

5  *Intern. Ins. Co. v. Superior Court (G.K. Backlund, Inc.)*, 62 Cal.App.4th 981, 988 (1988). In

6  this instance, the tripartite relationship on First National's Payment Bond is between First

7  National as surety, Geo Grout as principal, and Sukut as obligee. (Exhibit 2 to Echigoshima

8  Supplemental Declaration, ¶ 9.) Whereas, the tripartite relationship on the Safeco payment

9  bond is between Safeco as surety, Sukut as principal, and all persons named in Civil Code

10 Section 3181, as the obligee. (See Declaration of Mark Rice [Document 65], Exhibit F.)

11 This is not the same obligation. The Bond issued by First National named Sukut as the

12 obligee, meaning Sukut could rely on First National to pay any claims asserted by Geo

13 Grout's vendors. The fact that Geo-Grout or its vendors had a direct right of action against

14 Safeco on Sukut's payment bond, does not alter First National's obligations to Sukut.

15     First National had the primary obligation to pay valid claims asserted by Geo Grout's

16 vendors. In making each of the payments set forth above, First National relied on the

17 obligations under the Payment Bond and the information provided by Geo Grout to First

18 National. (Echigoshima Supplemental Declaration, ¶ 12.) In that regard, Geo Grout

19 requested First National make each of the payments to its vendors. (Echigoshima

20 Supplemental Declaration, ¶ 12; see also Exhibit 3 to Curran Supplemental Declaration for

21 copies of Geo Grout's request for First National's payments.)

22     **G.   First National argues that Defendants' claims of exemption for their homes, cars and jewelry and tools are unsubstantiated.**

23

24     First National objects that Defendants' claims for exemption are not substantiated.

25 For example, Defendants each own several pieces of real property. Defendants fail to

26 specify which real property Defendants claim are exempt by CCP § 703.010. CCP §

27 487.020(b) requires that to support and substantiate a claim that the property to be

28 attached is necessary for the support of Defendants and their families, there must be filed a

1    financial declaration, signed under oath, per Code of Civil Procedure Section 703.530.

2    There is no financial statement included in the Opposition. Therefore, Defendants should

3    not be accorded any relief under this provision.

4        At the hearing, Defendants conceded that their claims of exemption were

5    incomplete, due to the expedited nature of this proceeding.

6    **IV.**         **Defendants' Opposition**

7        The defense of Defendant Geo Grout ("Geo")  to payment in this case, is that its

8    surety, First National Insurance Company, the Plaintiff, is also the surety posting a payment

9    bond for Sukut Construction, Inc. ("Sukut") on the San Pablo Dam Seismic Upgrade project

10    for the East Bay Municipal Water District ("EBMUD") for which Geo Grout was Sukut's

11    subcontractor for grouting work that serves to stabilize the dam structures against

12    earthquake. The entire third party vendor claims that Plaintiff First National Insurance

13    Company has paid, relate to differing site conditions encountered by Sukut and Geo Grout

14    on that EBMUD project and extra project costs, or the actual base contract work that Sukut

15    wrongfully has not paid to Geo Grout. Those unpaid subcontract funds to date equal or

16    exceed $866,000, representing $268,000 in unpaid progress billings and change orders,

17    and $550,000 or more in unpaid claim costs.

18        While Geo's subcontract with Sukut was for $871,000, due to the differing site

19    conditions, that is, unanticipated wood debris, Geo claims to have incurred direct costs per

20    its attached job cost report, of $1,476,111.35. See job cost report, final page, attached as

21    Exhibit 1 to Tholin Declaration. Geo has been paid to date, only $327,426.07 on that

22    project, as reflected in its AR Aging, also attached as Exhibit 1 to the Tholin Declaration.

23    This represents a negative cash flow on that Sukut project, of $1, 148, 685.30, before

24    entitled mark up of 15% under the subcontract terms. Once mark up is added, Geo's claim

25    is $1, 370,000, as set forth in the pending lawsuit filed against Sukut and its surety Safeco,

26    in Contra Costa Superior Court.

27

28

United States District Court

For the Northern District of California

1    First National, though a subsidiary of Safeco, as Defendants learned shortly after

2    First National filed its applications for writs of attachment, has been previously advocating

3    through its agents Rob Erwin of Benchmark Consulting, and its counsel, James Curran,

4    that Geo file a collection suit, which it has done, to collect the money from Safeco and

5    Sukut. Since Safeco owns Plaintiff First National Insurance Company according to Geo's

6    attorney's research, and has no employees of its own as a "business unit" of Liberty

7    Mutual, Defendants respectfully submit it would be inequitable not to permit this offset, and

8    deny this writ. Geo claims the writ would have the result, or intent, of putting Geo Grout out

9    of business.

10    By virtue of the payment bond obligation owed to Geo Grout by First National's

11    owner and parent corporation Safeco on that payment bond issued Sukut, First National

12    owes more money to Geo Grout, than Geo Grout owes to First National. That is, there is a

13    complete offset, barring summary judgment, and barring the writs of attachment, which for

14    other reasons, would be inequitable as well.

15    Until recently, First National and Geo Grout have worked cooperatively in evaluating

16    the vendor claims on the project. First National in discharge of its duties under both bonds

17    (the one issued Geo Grout and the one issued Sukut), chose to satisfy those claims out of

18    the Geo Grout bond, rather than have Safeco pay the claims. However, given that the

19    reason for non-payment was bond principal Sukut's failure to pay Geo Grout, and owner

20    EBMUD's improper refusal to acknowledge the differing site conditions causing further

21    extra costs, First National in defendant's view should have paid the claims on behalf of

22    Sukut, since it was that bond principal's direct actions, and pass through duties to Geo

23    Grout, that caused Geo Grout's cash flow to suffer.

24    Defendants argue that Plaintiff First National had a duty, and under the implied

25    covenant of good faith and fair dealing, to tread lightly and to provide Geo Grout time to use

26    the contract processes to collect sums owed from Sukut and from Safeco. Attached to Mr.

27    Rice's declaration are his demand letter of January 12, 2010, to Sukut, Kenneth Tholin's

28

1  letter to Sukut of January 12, 2010, January 19, 2010 and February 23, 2010 and Mr.

2  Curran's letters to Sukut objecting to their threats of termination of Geo Grout.

3      Defendants hired a claims consultant, Thomas P. Reeves, and believe, based on his

4  work product analysis, that GEO's claim costs on a claim basis is $550,000 or more, plus

5  unpaid progress and change order billings of $286, 267. These sums total $836, 267 and

6  are asserted in Defendants' pending State Court action against Sukut and surety Safeco.

7      Defendants had hoped that the resolution of these offsetting claims, and a return to

8  a cooperative arrangement and forbearance pending our enforcement of rights against First

9  National as Sukut's surety, would take place at the mediation set for the week of November

10 2, 2010. Defendants' counsel provided copies of notices from the court ordered appointed

11 mediator indicating that this week was set for mediation, but awaiting the availability

12 confirmation of First National's decision maker. However, when prompted by the mediator

13 and Defendants' counsel, First National's counsel advised his client was unavailable for any

14 day in the next 2.5 months, or until mid January, 2011. This would be ineffectual, because

15 by then the Summary Judgment motion and this writ motion would be heard, and mediation

16 should take place first, as agreed, ordered and intended.

17     Defendants deem it necessary to enforce their own rights against First National

18 under its payment bond obligations to Geo Grout under the project payment bond issued by

19 First National's owner Safeco for Geo Grout's benefit. A copy of that suit is attached to Mr.

20 Rice's declaration, and is pending in Contra Costa Superior Court  It includes a cause of

21 action on the payment bond in excess of the First National's claim herein, and Defendants

22 characterize their claim as a valid one supported by First National. It also includes a cause

23 of action for declaratory relief relating to this offset. Defendants ask this Court to stay this

24 case pending adjudication of the merits of the State court case.

25     Additionally, no writ of attachment is conceivably possible against Geo Grout's

26 business assets as its business bank, First National Bank (unrelated to First National

27 despite similar names) holds a UCC-1 and collateral agreement over "all assets."   See

28

United States District Court

For the Northern District of California

1    collateral security agreements and UCC-1 with that bank, attached to the Declaration of

2    Kenneth Tholin as Exhibit 5.

3         Further, due to the senior and blanket security apparently held (and claimed) by the

4    Bank, Defendants argue that the Bank should have received formal notice of the writ of

5    attachment application to assert and protect its rights. First National is well aware of the

6    senior lien position of the Bank, and Defendants have communicated that to First National's

7    representatives, through legal counsel Mark Rice.

8         It is true that, absent this offset, First National has paid claimants that Geo Grout

9    owed money to for work, equipment and materials, and quality control services on the

10   Sukut EBMUD San Pablo Dam Seismic Retrofit project. It is also true that Geo Grout, and

11   Mr. Quiles and Mr. Tholin, and their spouses, executed the general indemnity agreement

12   with First National. However, as they are tendering their rights and demands to First

13   National to pay the same amounts under the Sukut bond, Defendants argue that First

14   National should do so immediately, and cancel the debt.

15        This lawsuit risks putting Geo Grout out of business. There is a disagreement with a

16   second surety, Western, over who will be able to receive deeds of trust on the Quiles and

17   Tholin personal real estate, as part of two pending settlement discussions that are close to

18   being resolved, and simply need a timely mediation to bring about a resolution.

19        Defendants have offered deeds of trust on all such personal property to the sureties

20   with a request that they allocate the security fairly among them. Defendants face multiple

21   demands. Geo Grout is facing a $1 million debt claim by its bank, and a $4.6 million claim

22   by the other surety, Western, which has been funding two BART projects Defendants are

23   performing. Defendants need the cooperation of all three creditors, and believe with that

24   cooperation they are in a good position to continue to receive the sort of grout projects that

25   have and will continue to allow Geo Grout to be profitable and pay its obligations as they

26   come due.

27

28

United States District Court

For the Northern District of California

1    There remain efforts by Western to work with these other creditors to achieve an

2  overall work out and restructure out debt while we collect litigation receivables. Currently,

3  Defendants have two difficult projects, Sukut and the West Bay, for two difficult owners

4  (EBMUD and BART), and claim that the prime contractors have improperly withheld

5  progress payments because claim conditions extended the project time in each instance.

6  Defendants expect, and are guardedly optimistic that with ongoing new work they are

7  receiving, with cooperation we will weather this storm. Defendants are getting new

8  profitable work in the door.

9    If however, the Court grants the writ, Defendants contend it is likely their bank will

10  not extend the business line of credit further, and the other Surety, Western, may also

11  make a 'run to court' and abandon its efforts to work with Defendants and their other

12  creditors. Destruction of Defendants' business, and over 40 years of life's work would

13  occur. Given the strong likelihood of a viable defense of offset, and First National Insurance

14  Company's encouragement to counsel for Defendants to work together to collect these

15  sums from the EBMUD and Sukut parties, Defendants argue it would be unfair to let this

16  $500,000, temporary and offset debt cause loss of Defendants' business.

17    **V.    Analysis**, **Conclusion and Order**

18    The Court finds too many disputed issues of fact, including the amounts owed and

19  by whom to whom, the relationship between First National and Safeco, the contractual

20  obligations between the parties and non-parties, and the rights of the other creditors and

21  sureties, to conclude that First National has established a likelihood of prevailing on its

22  motion for summary judgment. Therefore First National fails to establish a prima facie basis

23  for this Court to grant its application for writs of attachment on virtually all Defendants'

24  residential and commercial property, as well as their business equipment, receivables and

25  cash accounts. If the Court granted First National's application for writs of attachment,

26  Defendants would be effectively put out of business, unable to operate, obtain bonding, or

27  make payroll.

28

**United States District Court**
For the Northern District of California

1    The Court also finds that First National Bank, as a secured creditor of Defendants,

2  on some of the same assets which First National seeks to attach, should have been notified

3  of this proceeding and allowed to defend its interests, and that it should be permitted to

4  participate in the mediation of this matter.

5    Furthermore, at the hearing on First National's applications, Defendants offered to

6  voluntarily submit to an order precluding them from disposing of or encumbering certain

7  assets, substantially more valuable than the dollar value of the relief that First National

8  seeks. The Court therefore finds that any possible harm to First National can be prevented

9  without recourse to the writs requested. The Court also finds that the dissolution of

10  Defendants' business could well result in First National recovering nothing, since it is a

11  junior creditor.

12    Accordingly, it is hereby ordered that Defendants shall not sell, transfer or encumber

13  their two residential properties, consisting of Defendants' homes in Fairfield and San

14  Mateo. In addition, Defendants shall not sell, transfer or encumber any of their business

15  equipment listed at Exhibit 1 to the Applications for Writs of Attachment. The Court accepts

16  Defendants' counsel's representation at the hearing on this matter that the total equity in

17  the homes, plus the value of the business equipment, substantially exceeds the value of

18  First National's claims in this action. The Court finds that this resolution protects First

19  National's interest in obtaining an enforceable judgment against Defendants, either by

20  Court order or through mediation, while preventing the irreparable harm to Defendants of

21  destroying their capacity to generate income to maintain their business and pay their

22  creditors.

23    IT IS SO ORDERED.

24  DATED: November 12,  2010

25

26                              _____
                                James Larson
27                              United States Magistrate Judge

G:\JLALL\CASES\CIVIL\10-2126\Order Deny 35-41.wpd

28